Gerald Lee CLARK, Petitioner,

v.

Ray PAGE, Warden, Oklahoma State Penitentiary, State of Oklahoma, Respondent.

No. A–13383.

Court of Criminal Appeals of Oklahoma.

July 31, 1963.

Sid White, Oklahoma City, for petitioner.

Charles Nesbitt, Atty. Gen., Charles Owens, Asst. Atty. Gen., for respondent.

PER CURIAM.

On May 20, 1963, there was filed in this Court a "Petition for Habeas Corpus and for Ancillary Relief" in the name of Gerald

Lee Clark, by his mother and next friend, Rosie Kersey.

It is the position of the petitioner, Gerald Lee Clark, that the judgment and sentence rendered by the District Court of Greer County in 1950, sentencing him to life imprisonment for the Crime of Murder is null and void for want of due process of law, and, violates both the constitutions of the United States and the State of Oklahoma.

From the records presented this Court for review, it appears that at the age of 16 the petitioner was charged in Ottawa County District Court with the Crime of Burglary, convicted and sentenced to the Oklahoma State Reformatory at Granite. Subsequently, on August 22, 1950, the petitioner and one William Jasper, both inmates of said institution, were charged by preliminary complaint with the murder of another inmate, Jack D. Gee. Said murder being committed "on or about August 13, 1950."

Upon filing of his petition for Habeas Corpus, this Court duly issued a Rule to Show Cause. The State of Oklahoma by its Attorney General filed in response a Motion to Dismiss. On May 22, hearing was held on petitioner's writ, at which time testimony on behalf of petitioner and arguments of counsel for both parties was heard by the Court.

In his arguments before the Court, and in his brief, petitioner's counsel alleges in substance that at the time of his arraignment and at the time of entering his plea of guilty to the charge of murder, petitioner was 17 years of age, "emotionally unstable and low in mentality" and incapable of waiving certain rights. Further, that he was represented by court appointed counsel, newly admitted to the practice of law, and, thus incapable of protecting his rights.

Petitioner's exhibits show that he was arraigned before a Justice of the Peace in Greer County, September 1, 1950, at which time he appeared in open court, where he was informed of the nature of the charge against him, his right to aid of counsel, change of venue and waiving of examination. At this time, he (quoting from the transcript of preliminary hearing) "did waive preliminary * * *. An atty. Had information Read to Him". Thereupon, an information was duly filed in the District Court, and the minutes of the Court reflect the following:

"September 5, 1950"

"Defendant is present; Defendant Gerald Lee Clark Arraigned, Court appoints Yonne Lee Pendleton to represent Gerald Lee Clark, the choice of defendant. Waives reading of Information, states that name is correct on information, Defendant being present in person and by Attorney Yonne Lee Pendleton, enters plea of guilty. Upon Defendant's plea of guilty, it is the judgment of Court he is guilty and is sentenced to serve a term of life imprisonment in State Penitentiary upon completion of present term. Defendants Attorney fee set at $25.00."

There is not one scintilla of evidence offered by petitioner to support his allegation that he was at the time of said prosecution, 13 years prior to the filing of this Writ "emotionally unstable and low in mentality".

No proof was offered in support of the assertion that the Court appointed attorney was incompetent to represent the accused, but it appears from the record, that the petitioner was represented by a duly qualified and licensed attorney, a member of the Bar of this State.

■ This Court has held that "the burden is on petitioner to show facts * * * that counsel failed in some manner to properly present petitioner's defense" at the trial. Manley v. Raines, Okl.Cr., 348 P.2d 189, 190.

■ In our opinion, counsel for petitioner has failed to allege any facts to show the court appointed attorney did not represent him faithfully and to the best of her ability at all stages of the proceeding, and the contention that counsel was incapable of

protecting his rights based solely on her new admittance to the bar is without merit.

■ Under the circumstances stated, we find that the decision rendered in In Re Russell, Okl.Cr., 354 P.2d 485 to be controlling in the case at bar. In the Russell Case, we held:

"Where it affirmatively appears that judgment and sentence is valid because trial court has jurisdiction of subject matter, person of petitioner, and authority under law to render judgment and sentence imposed, and that trial court did not deny petitioner his fundamental rights, habeas corpus will be denied."

On the hearing of this cause, petitioner presented the testimony of Dr. D. F. Faris, who visited with him only briefly in the State Penitentiary, and who expressed the opinion that further examination by competent psychiatrist would be beneficial in determining the present state of petitioner's mental health. The witness further observed petitioner was being restrained in isolation, and that the petitioner appeared to be unresponsive. This testimony was apparently offered in support of petitioner's prayer for Ancillary Relief:

"That the Court order Respondent forthwith to procure an examination of said subject by state psychiatrists and psychologists with the view to ascertain his mental condition.

"That if said subject be found to be mentally ill then said Respondent be required forthwith to transfer said subject to a proper institution of the State of Oklahoma for treatment." (Citing the Petition for Writ of Habeas Corpus)

Title 43A O.S.1961 § 61 provides:

"When a person confined in a penal or correctional institution or reformatory of this State appears to be mentally ill, the warden or other head of that institution shall notify the Director of Mental Health, who shall thereupon cause said person to be examined as to his mental condition. If this examination reveals that said inmate is in need of observation and treatment on account of mental retardation or mental illness, and that such observation and treatment cannot be properly carried out in the institution in which he is incarcerated, the director may then order his transfer to a state mental institution, where he shall remain until the superintendent of the hospital which received him advises the director that his condition has so far improved that he may be returned to the institution from which he came without special jeopardy to his mental health or the discipline and conduct of that institution. The costs incurred in transferring the prisoner shall be borne by the penal institution. If the sentence expires during the time of the prisoner's stay in the mental institution, and he is still mentally ill and a fit subject for commitment to a state institution, the superintendent shall immediately instigate proceedings for commitment under one of the procedures provided in this Title."

The alterative relief prayed for by counsel for petitioner was denied in open court at the conclusion of testimony and argument of counsel for the reason that no formal or written application had been made by counsel to the Warden of the State Penitentiary, and no denial of same had been made by him.

■ The matter of examination and transfer of petitioner is vested in the Warden of the Penitentiary and the Director of Mental Health. We suggest that if counsel for petitioner sincerely questions the present mental condition of petitioner he should direct a formal request to the proper authorities empowered under Title 43A O.S.1961 § 61, supra, to inquire into this matter.

For the reasons above set forth, the Writ is accordingly denied.

Writ denied.