**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Douglas HUTCHENS,
Defendant–Appellant.**

**No. 11651.**

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 25, 1980.

Albert A. Crump, Jr., Rolla, for defendant–appellant.

John Ashcroft, Atty. Gen., Edward F. Downey, Paul R. Otto, Asst. Attys. Gen., Jefferson City, for plaintiff–respondent.

FLANIGAN, Chief Judge.

A jury found defendant guilty of selling cocaine (§ 195.017, subsec. 4(1)(d); § 195.020 RSMo 1978) and he received a sentence of ten years. Defendant appeals.

The state's evidence shows that on April 6, 1979, Clifford R. Collier, a Missouri highway patrol trooper, who was working "under cover," purchased four packets from defendant. State's witness Afton Ware, a chemist, identified the contents of the packets as cocaine.

Defendant's first point is that the evidence is insufficient to support the verdict, and the trial court erred in denying defendant's motion for acquittal, for the reason that there was no "evidentiary proof that cocaine is a controlled substance under the provisions of Chapter 195." Defendant argues that it was incumbent upon the state to make such proof "either by introduction of a statute or request for judicial recognition of the same under the statute."

Whether cocaine is a controlled substance, and included in Schedule II under the language of § 195.017, subsec. 4(1)(d) RSMo 1978, is a question of law for the court. *State v. Carter*, 475 S.W.2d 85, 90[4, 5] (Mo.1972); *State v. Harris*, 564 S.W.2d 561, 568 (Mo.App.1978); *State v. Burrow*, 514 S.W.2d 585, 588 (Mo.1974); *State v. Stavricos*, 506 S.W.2d 51, 56 (Mo. App.1974). As *Carter* points out, at p. 90, the interpretation of a statute is the function of the court, not the jury. Whether the substance which defendant sold to Collier was cocaine was a matter of fact to be decided by the jury. *Carter, Stavricos, Burrow*, all supra.

Cocaine is a controlled substance included in Schedule II for the reason that it falls within the language of § 195.017, subsec. 4(1)(d).[1] Missouri courts have given at

---

1. Subsec. 4(1)(d) of § 195.017 reads:

"4. The controlled substances listed in this subsection are included in Schedule II.

(1) Any of the following substances, except those narcotic drugs listed in other schedules, whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis, or by combination of extraction and chemical synthesis:

(d) Coca leaves and any salt, compound, derivative, or preparation of coca leaves, and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, but not including decocainized coca leaves or extractions which do not contain cocaine or ecgonine."

least indirect recognition to that statement by affirming convictions where the substance involved was cocaine. *State v. Long*, 550 S.W.2d 854 (Mo.App.1977); *State v. Brown*, 535 S.W.2d 606 (Mo.App.1976); *State v. Hyde*, 532 S.W.2d 212 (Mo.App. 1975); *State v. Harms*, 507 S.W.2d 29 (Mo. App.1974). The language of § 195.017, subsec. 4(1)(d) is essentially the same as the language of Title 21 U.S.C. § 812, Schedule II(a)(4). The federal courts hold that cocaine falls within the language of the federal statute. *United States v. Jones*, 543 F.2d 627, 630[7] (8th Cir. 1976); *United States v. Foss*, 501 F.2d 522, 530 (1st Cir. 1974); *United States v. Siak*, 432 F.Supp. 1035, 1036[1] (D.C.1977); *United States v. Amidzich*, 396 F.Supp. 1140, 1147 (D.C.1975).

■ The trial court was entitled to take judicial notice of the contents of § 195.017, subsec. 4(1)(d), *State v. Gardner*, 600 S.W.2d 614, 619 (Mo.App.1980); *State v. Harris*, 564 S.W.2d 561, 568 (Mo.App.1978), and indeed had a duty to do so. *Bowen v. Missouri Pac. Ry. Co.*, 118 Mo. 541, 24 S.W. 436, 437 (1893); *Bly v. Skaggs Drug Centers, Inc.*, 562 S.W.2d 723, 726[2] (Mo.App.1978). It was, accordingly, unnecessary for the state to introduce evidence of the existence of the statute or to make a specific request that the trial court take judicial notice of it. *New York Indians v. United States*, 170 U.S. 1, 18 S.Ct. 531, 540, 42 L.Ed. 927 (1898); *Jenkins v. Collard*, 145 U.S. 546, 12 S.Ct. 868, 873, 36 L.Ed. 812 (1892); 29 Am. Jur.2d Evidence § 34, p. 69. See also *State v. Judge*, 315 Mo. 156, 285 S.W. 718, 722[12] (1926); *State v. White*, 263 S.W. 192, 194[5, 6] (Mo.1924).

Defendant's first point has no merit.

Defendant's second point is that the trial court erred in denying defendant's "Motion to Strike Jury Panel" for the reason "that said jury panel members had heard similar cases resulting in members of the jury panel being biased, prejudiced and partial."

The trial took place on November 20, 1979. On November 14 defendant filed a "Motion to Strike Jury Panel." The unverified motion stated: "The current jury panel has served since the beginning of the term of court in September; the jury panel is prejudiced against defendant because they have heard a case, *State v. Ingram*, which presented the same witnesses for the state, the same charge, and similar circumstances, said trial resulting in a conviction."

On the morning of the trial, and prior to its beginning, defense counsel presented the motion to the court. Counsel orally supplemented the grounds contained in the motion by stating: "This panel heard *State v. Howard* [Mo.App., 601 S.W.2d 308 (1980)] yesterday, which is also a sale of controlled substance, with the same state's witnesses." The court denied the motion.

During voir dire examination the prosecuting attorney stated:

"Ladies and gentlemen, I think some, or all of you, were here yesterday and you probably saw the witnesses for the State then. They are the same witnesses today, Officer Clifford Collier and the lab technician from Jefferson City, Afton Ware.

"Those of you that heard the case yesterday, are there any of you who think that since you've already heard these men testify under oath, you would give their testimony more weight than you would any other witness?

"No further questions, Your Honor."

During voir dire defendant's attorney, who is not his counsel on this appeal, stated:

"Ladies and gentlemen of the panel, since we are—have already been acquainted in other cases, I have to pursue simply the same line that Mr. Beger just asked you. I want to ask each one of you, since many of you participated in two other drug cases in this county, if you would find it difficult to set that experience aside and listen to this case on its facts alone and make an independent judgment? Anyone that would have difficulty doing that?

"Is there anyone on this panel that could not begin this trial with the presumption that this defendant is innocent until proven guilty?

"I take it by your silence that each one of you could evaluate this case separately from any others that you may have heard?

"I have no further questions."

■ A defendant who challenges the array of petit jurors has the burden to prove the facts on which the challenge is based. *State v. Aikens*, 507 S.W.2d 386, 388[5] (Mo.1974). Mere oral assertions of defense counsel are insufficient to carry the burden of proof. *State v. Davis*, 462 S.W.2d 798, 800[2] (Mo.1971). The disqualification of an individual juror for bias is not sufficient grounds for a challenge of the entire panel. *State v. Butler*, 549 S.W.2d 578, 580[2] (Mo.App.1977). See also *State v. Weidlich*, 269 S.W.2d 69, 71[4] (Mo.1954).

■ When defendant's unverified motion was presented to the court for ruling, no evidence was offered in support of it.[2] The motion was then denied. The motion was not renewed at any subsequent stage of the proceedings. The statement of the prosecuting attorney, made during the course of the voir dire examination, may, perhaps, support an inference that some of the members of the jury panel, as it was constituted before the sides made their respective strikes, sat as jurors in a prior case where witnesses Collier and Ware testified for the state. The record does not show, however, whether any of such persons was challenged for cause by the defendant or sat on the jury itself. Although it is clear from the foregoing that defendant's second point is afflicted with procedural deficiencies which, singly or in combination, may be fatal to it, deeper and compelling reasons exist for the rejection of defendant's second point.

■ Neither side has cited a Missouri case dealing with the validity of a challenge to an array based upon a showing that some of the members of the array sat in a prior criminal case, involving a similar offense but a different defendant, where the state used identical witnesses.

In *Johnson v. United States*, 484 F.2d 309 (8th Cir. 1973) the defendant was convicted of distributing heroin. Several of the government witnesses had testified in previous trials involving other defendants. In affirming the action of the trial court, which denied defendant's motion to discharge the jury panel, the court of appeals said, at p. 310:

"Johnson failed to establish that any juror was actually prejudiced in favor of the three government witnesses. He does not point to the voir dire of any particular juror as indicating actual prejudice, nor does he complain that the voir dire was in any way inadequate. Indeed, he did not even attempt to have any juror dismissed for cause. His claim that he was denied an impartial jury must therefore rest wholly on a per se theory of implied bias. We do not think that the danger of prejudice against the accused arising from jurors having served in prior cases involving the same government witnesses but different, unrelated defendants and entirely different and independent transactions is great enough to justify a per se rule of bias."

With refreshing unanimity other federal authorities agree with the ruling in *Johnson* that in the absence of some evidence of actual partiality a juror is not disqualified merely because he previously sat in a similar case arising out of a separate set of circumstances even though the offenses charged were similar and some of the same prosecution witnesses testified in each case. *United States v. Carranza*, 583 F.2d 25 (1st Cir. 1978); *United States v. Haynes*, 398 F.2d 980 (2d Cir. 1968); *Government of Virgin Islands v. Williams*, 476 F.2d 771, 773[3] (3rd Cir. 1973); *Belvin v. United States*, 12 F.2d 548, 550 (4th Cir. 1926); *Wilkes v. United States*, 291 F. 988, 990 (6th Cir. 1923); *United States v. DeMet*, 486 F.2d 816, 819 (7th Cir. 1973). State authorities to the same effect include: *Hill v.*

---

2. ". . . [C]ounsel for appellant in argument indicated that we could take judicial notice of the records of the circuit court. We do not agree. Although we may take judicial notice of our own records, *Hays–Fendler Const. Co. v. Traroloc Investment Co.*, 521 S.W.2d 171 (Mo.App.1975), matters of record in other courts are denied notice. *Kansas City v. Mathis*, 409 S.W.2d 280 (Mo.App.1966); *State v. Moreland*, 351 S.W.2d 33, 37 (Mo.1961)." *State v. Collett*, 526 S.W.2d 920, 929 (Mo.App. 1975).

**30**

*State,* 348 So.2d 848 (Ala.Cr.App.1977); *Holland v. State,* 260 Ark. 617, 542 S.W.2d 761 (banc 1976); *White v. Commonwealth,* 499 S.W.2d 285 (Ky.App.1973); *People v. Wyskochil,* 76 Mich.App. 468, 257 N.W.2d 126 (1977); *State v. Mays,* 139 N.E.2d 639 (Ohio App.1956); *Commonwealth v. Fratto,* 237 Pa.Super. 583, 352 A.2d 499 (1976); *State v. Dixon,* 560 P.2d 318 (Utah 1977); *State v. Charlot,* 206 S.E.2d 908 (W.Va. 1974). See Anno. 160 A.L.R. 753, 767.

Defendant's second point has no merit.

The judgment is affirmed.

TITUS, GREENE and PREWITT, JJ., concur.